ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| PAD, INC.<br><br>Parte Apelada<br><br><br>v.<br><br><br>BARRANQUITAS AUTO CORP. H/N/C BENÍTEZ AUTO CAGUAS, ET AL.<br><br>Parte Apelante | TA2025AP00683 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>CG2020CV02376<br><br>Sala: 701<br><br>Sobre:<br>Incumplimiento de contrato y Daños |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2026.

Compareció ante este Tribunal la parte apelante, Barranquitas Auto Corp. (en adelante, "BAC" o "Apelante"), mediante recurso de apelación presentado el 16 de diciembre de 2025. Nos solicitó la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala de Caguas (en adelante, el "TPI"), el 9 de octubre de 2025. A través de dicho dictamen, el TPI declaró "Ha Lugar" la "**Demanda**" presentada por PAD, Inc. (en adelante, "PAD" o "Apelado"). Dicho dictamen fue objeto de una solicitud de reconsideración que fue declarada "No Ha Lugar" mediante *Orden* del 17 de noviembre de 2025.

Por los fundamentos que expondremos a continuación, *revocamos* la *Sentencia* apelada.

**I.**

El presente caso tuvo su inicio el 11 de noviembre de 2020, cuando PAD radicó una **"Demanda"** contra BAC por vicios ocultos. En la misma, alegó que el 18 de enero de 2019 compró al Apelante un vehículo marca Kia, modelo Óptima SX, año 2018, color azul claro, con matrícula JCG-478

y número de identificación 5XXGW4L23JG210481, por la cantidad de $23,000.00. Precisó que la transacción fue gestionada por el Sr. Ramón Benítez y formalizada por el Sr. Eric Colón, ambos representantes autorizados de BAC.

Indicó que el 24 de enero de 2019, procedió a revender la referida unidad vehicular a RC Investments (en adelante, "RC"), a través del Sr. Roberto Calderón Vega, por la suma de $28,000.00, con el propósito de que ésta fuera revendida posteriormente a un tercero. Sostuvo que, una vez el automóvil fue vendido a una tercera persona, comenzó a presentar fallas mecánicas durante el mes de febrero de 2019, las cuales impedían totalmente su uso conforme a su finalidad, razón por la cual fue llevado al servicio de garantía del manufacturero. Añadió que, como consecuencia directa de esta situación, recibió múltiples reclamaciones extrajudiciales que afectaron negativamente su imagen comercial.

Expuso que el vehículo permaneció desde febrero de 2019 hasta el 5 de noviembre de 2019 en el servicio de garantía Auto Grupo Kia, ubicado en la Avenida Kennedy en San Juan, Puerto Rico. Relató que en dicha institución se le informó, tanto al Apelado como a RC Investments, que el vehículo no contaba con garantía de manufacturero, debido a que había sido declarado pérdida total por inundación en el año 2018 por la aseguradora Universal Insurance Company (en adelante, "Universal"), lo cual fue corroborado mediante evidencia fehaciente.

De igual forma, alegó que, desde mayo de 2019, notificó lo ocurrido a los empleados y representantes de BAC, y que el Sr. Benítez le manifestó que realizaría las gestiones correspondientes para devolver el dinero pagado y cubrir la pérdida sufrida. No obstante, ante la alegada inacción reiterada de BAC, y con el propósito de mitigar los daños ocasionados, el 12 de noviembre de 2019 se vio obligada a responder por el vehículo en cuestión, lo que la llevó a devolver la suma de $28,000.00 recibida por la venta a RC Investments.

En atención a lo anterior, sostuvo que debido a los vicios ocultos que ostentaba el vehículo en controversia procedía que el TPI le ordenara a BAC

al pago de las siguientes cantidades por concepto de los daños y perjuicios sufridos, a saber: (1) $23,000.00 por concepto de la compraventa del vehículo; (2) $5,000.00 por pérdida de ganancias; (3) $200.00 por concepto de permiso de marbete; (4) $700.00 por gastos de acarreo en grúa; (5) $1,500.00 por concepto de almacenaje del vehículo; y (6) $20,000.00 por pérdida de plusvalía y menoscabo de su buena imagen comercial.

Así las cosas, el 1 de febrero de 2021, MAPFRE PRAICO Insurance Company (en adelante, "MAPFRE"), presentó una "**Moción de Sentencia Sumaria**", alegando que la póliza expedida a favor de BAC no proveía cubierta para los hechos reclamados en la "**Demanda**". El 2 de febrero de 2021, BAC presentó su **"Contestación a Demanda"**, mediante la cual negó la mayoría de las alegaciones expuestas en su contra y sostuvo que la transacción fue válida, y que los daños reclamados eran especulativos, exagerados y no conformes al derecho aplicable.

Posteriormente, el 25 de febrero de 2021, BAC presentó su "**Oposición a Moción de Sentencia Sumaria de la Codemandada MAPFRE PRAICO Insurance Company**", alegando que fue víctima de una falsa representación en una transacción comercial cubierta por la póliza. El 2 de marzo de 2021, BAC presentó una "**Demanda de Tercero**", en la que sostuvo que el 9 de octubre de 2018 la Sra. Xiomara Reyes Maysonet le vendió mediante engaño un vehículo previamente declarado pérdida total por inundación, sin informar dicha condición ni la inexistencia de garantía del fabricante. A tenor con ello, le solicitó al foro de instancia que declarara "Con Lugar" la reclamación y se le imputara responsabilidad frente a PAD por cualquier cantidad que se adjudique contra BAC, además de costas y honorarios.

El 8 de marzo de 2021, PAD presentó su correspondiente "**Moción en Oposición a Solicitud de Sentencia Sumaria**". El 17 de marzo de 2021, MAPFRE presentó su "**Réplica a Oposición de Moción de Sentencia Sumaria**", mediante la cual sostuvo que las *Oposiciones* presentadas no cumplían con la Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3, y reiteró que la póliza no proveía cubierta, ya que: (1) el vehículo no era un

auto asegurado; (2) el endoso de *False Pretense Coverage* no cubría responsabilidad frente a terceros; y (3) los hechos no configuraban los supuestos del endoso CA 25 03 10 13. Además, indicó que los daños reclamados no constituían "lesiones corporales" o "daños a la propiedad" causados por un "accidente" relacionado con un "auto" cubierto. En respuesta a lo anterior, el 9 de febrero de 2024, el TPI emitió una *Sentencia Parcial* mediante la cual declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por MAPFRE.

Luego de diversos trámites procesales, el 19 de marzo de 2025, se celebró la *Conferencia con Antelación al Juicio*. El juicio en su fondo se llevó a cabo el 6 de octubre de 2025. Tras escuchar los testimonios vertidos y evaluar la prueba documental presentada, el 9 de octubre de 2025, el foro *a quo* dictó *Sentencia* declarando "Ha Lugar" la "**Demanda**" y condenando a la Apelante al pago de las siguientes partidas: (1) $23,000.00 por concepto de la compraventa (resarcimiento de contrato); (2) $5,000.00 por concepto de ganancias dejadas de percibir; y (3) $5,000.00 por concepto de honorarios de abogado. Inconforme con dicha decisión, el 24 de octubre de 2025, BAC presentó una "**Reconsideración**" la cual fue declarada "No Ha Lugar" mediante Orden emitida y notificada por el TPI el 17 de noviembre de 2025.

Aun insatisfecho con dicho proceder, la Apelante presentó el recurso que nos ocupa y le imputó al foro de instancia la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN LA APRECIACIÓN DE LA PRUEBA, LLEGANDO IRRAZONABLEMENTE A CONCLUSIONES QUE NO ESTÁN SUSTENTADAS EN LA EVIDENCIA QUE OBRA EN EL EXPEDIENTE Y QUE DESFILÓ EN EL CASO.**
>
> **SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR UNA RECLAMACIÓN DE DOLO QUE NUNCA FUE ALEGADA EN LA DEMANDA NI POSTERIORMENTE POR ENMIENDA A LAS ALEGACIONES Y QUE, AÚN CONSIDERANDO QUE FUE TRAÍDA POR PRIMERA VEZ EN EL ACTO DEL JUICIO, LA MISMA ESTARÍA PRESCRITA**
>
> **TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE PAD TENÍA LEGITIMACIÓN EN CAUSA PARA INSTAR UNA CAUSA DE ACCIÓN EN CONTRA DE BAC, A PESAR DE QUE HABÍA**

**DEJADO DE SER LA TITULAR DEL VEHÍCULO DE MOTOR QUE LE COMPRÓ, TODA VEZ QUE, COMO SU PROPÓSITO DE NEGOCIO, REVENDIÓ LA UNIDAD A UN TERCERO -TAMBIÉN REVENDEDOR DE VEHÍCULOS- QUE, A SU VEZ, LO REVENDIÓ A UNA CARTA PERSONA**

**CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONERLE A LA APELANTE EL PAGO DE HONORARIOS DE ABOGADO AUN CUANDO VALIDÓ LA DEFENSA PRINCIPAL SUSTANTIVA Y MERITORIA DE PRESCRIPCIÓN PRESENTADA POR LA APELANTE.**

El 17 de febrero de 2026, PAD presentó su "**Alegato en Oposición a Apelación Civil**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**[1]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

**B.**

El dolo es un vicio de la voluntad que implica "un complejo de malas artes, contrario a las leyes de la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio". S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 64 (2011); 31 LPRA sec. 6191. Este puede surgir al momento de la contratación o posteriormente, en la consumación del contrato. Pérez Rosa v. Morales Rosado, 172 DPR 216, 229 (2007). En

ese sentido, el callar sobre una circunstancia importante pertinente al objeto del contrato constituye dolo. García Reyes v. Cruz Auto Corp., 173 DPR 870, 886 (2008). Es decir, que el dolo no necesariamente implica una artimaña, sino que el silencio sobre determinados hechos relevantes para viabilizar la contratación, también se cataloga como tal. Bosques v. Echevarría, 162 DPR 830, 836 (2004).

Existen dos tipos de dolo: el grave y el incidental. 31 LPRA secs. 6211 y 6213. El dolo incidental es el que afecta las obligaciones accesorias del contrato y únicamente da lugar a una indemnización en daños y perjuicios. Colón v. Promo Motors Imports, Inc., 144 DPR 659, 667 (1997); 31 LPRA sec. 6213. Ello responde a que no tuvo una influencia decisiva sobre la obligación, dado a que, aunque hubo engaño en el modo en que el contrato fue celebrado, el perjudicado sí tenía la voluntad de contratar. Pérez Rosa v. Morales Rosado, *supra*, pág. 230; García Reyes v. Cruz Auto Corp., *supra*, pág. 887. En otras palabras, que el contrato se hubiera celebrado de todas formas, pero bajo condiciones diferentes. Colón v. Promo Motors Imports, Inc., *supra*, pág. 667.

De otro lado, el dolo grave se define como "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado". 31 LPRA sec. 6211. Véase, S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 64. Esto es, cuando el engaño recae en los elementos esenciales del contrato; es decir, que tiene un efecto en las motivaciones principales que llevaron a la parte afectada a vincularse. Colón v. Promo Motors, Inc., *supra*, pág. 669. De manera que, si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra. 31 LPRA sec. 6211. No obstante, el dolo recíproco no invalida el negocio jurídico ni obliga a resarcir. 31 LPRA 6213.

Cabe destacar que el dolo no se presume, sino que tiene que demostrarse, ya sea de forma indirecta o mediante evidencia circunstancial. García Reyes v. Cruz Auto Corp., *supra*, págs. 887-888. En consecuencia, la determinación de si el dolo es grave o incidental es una cuestión de

hecho. Por lo tanto, está sujeta a la apreciación de las circunstancias concurrentes en cada caso. Acosta & Rodas, Inc., v. PRAICO, 112 DPR 583, 616 (1982). Al determinar si existe dolo que anule el consentimiento, entre otros aspectos, se deben considerar: (1) la preparación académica del perjudicado; (2) su condición social y económica; (3) y las relaciones y tipo de negocios en que se ocupa. García Reyes v. Cruz Auto Corp., *supra*, pág. 887; Citibank v. Dependable Ins. Co., Inc., 121 DPR 503, 519 (1988). Así pues, el dolo puede surgir de un simple hecho o del conjunto de éstos y la evolución de las circunstancias y manejos engañosos. Acosta & Rodas, Inc. v. PRAICO, *supra*, pág. 616. Nuestro máximo foro ha expresado que:

> [Es posible] que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión, sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación, puede dar lugar a la variante del dolo causante [grave]. Colón v. Promo Motors, Inc., *supra*, pág. 669. (Corchetes suplidos).

**C.**

En virtud del Artículo 1373 del Código Civil derogado, el vendedor tiene el deber de responder por los vicios ocultos de la cosa vendida cuando éstos la vuelven inadecuada para el uso previsto o reducen significativamente dicho uso, de modo que, si el comprador los hubiera conocido, no la habría comprado o habría pagado un precio inferior. 31 LPRA sec. 3841. No obstante, dicha obligación no se extiende a los defectos manifiestos o que estuvieran a la vista ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos. Íd. Cuando existen defectos ocultos en el bien, el transmitente será responsable por el saneamiento de éstos, aunque los ignore. 31 LPRA sec. 3842.

Ahora bien, para que los defectos ocultos den lugar al saneamiento, es necesario que se cumplan los siguientes requisitos, a saber: (1) el bien fue transmitido a título oneroso, (2) el vicio es preexistente al momento de la venta, (3) éste no era conocido por el adquirente, (4) se trata de un defecto grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo su utilidad que, de haberlo

conocido el adquirente, no la habría comprado o habría dado menos precio por ella, y (5) que se ejercite la acción dentro del plazo legal. Ferrer v. General Motors Corp., 100 DPR 246, 255-256 (1971).

En concordancia con lo anterior, nuestro máximo foro judicial ha señalado que, para ejercer la acción redhibitoria por vicios ocultos en vehículos defectuosos, basta con que el comprador demuestre que el automóvil adquirido no funcionaba de manera normal y que el vendedor tuvo la oportunidad de subsanar las fallas y no pudo o no los corrigió. Ford Motor Co. v. Benet, 106 DPR 232, 238 (1977). En detalle, los vicios redhibitorios son aquellos defectos que exceden de las imperfecciones menores que cabe esperar normalmente en un producto determinado, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor. García Reyes v. Cruz Auto Corp. 173 DPR 870, 891 (2008). Si se cumplen los mencionados criterios, el "comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos". 31 LPRA sec. 3843. Finalmente, en cuanto al término de prescripción aplicable para instar dicha acción, el Artículo 1379 del derogado Código Civil dispone que esta se extingue a los seis (6) meses, computados a partir de la entrega del bien objeto de la compraventa. 31 LPRA sec. 3847; Polanco v. Cacique Motors, 165 DPR 156, 166 (2005).

**III.**

En el presente caso, el Apelante nos solicitó la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la "**Demanda**" interpuesta por PAD.

Por tratarse de un asunto de umbral, comenzaremos por discutir el segundo señalamiento de error. En esencia, BAC sostiene que el TPI erró al declarar "Ha Lugar" una reclamación de dolo que no fue alegada en la "**Demanda**", pues el presente pleito era uno por vicios ocultos. Veamos.

Del expediente ante nuestra consideración se desprende que el 11 de noviembre de 2020, PAD presentó una "**Demanda**" contra BAC por vicios ocultos. En resumidas cuentas, alegó que el 18 de enero de 2019 adquirió

de BAC un vehículo por la suma de $23,000.00. Igualmente, expuso que el 24 de enero de 2019, revendió el vehículo a un tercero con el propósito de que fuera posteriormente transferido nuevamente. Sostuvo que, luego de concretarse dicha venta, el automóvil comenzó a presentar fallas mecánicas que impedían su uso conforme a su finalidad, por lo que fue llevado al servicio de garantía del manufacturero. En vista de lo anterior, reclamó: (1) la devolución del precio de la compraventa, (2) compensación por la pérdida de ganancias, (3) gastos incidentales relacionados con el vehículo y (4) compensación por pérdida de plusvalía y menoscabo de su imagen comercial. Tras múltiples incidencias procesales, el 9 de octubre de 2025, el TPI declaró "Ha Lugar" la "**Demanda**", al concluir que BAC incurrió en dolo por vicios en el consentimiento al contratar con PAD.

Conforme adelantáramos en los acápites anteriores, el vendedor responde por los vicios ocultos de la cosa vendida cuando éstos la hacen impropia para el uso a que se destina o disminuyen de tal modo dicho uso que, de haberlos conocido el comprador, no la habría adquirido o habría pagado un precio inferior. 31 LPRA sec. 3841. El transmitente responde por dichos defectos aun cuando los ignore. 31 LPRA sec. 3841. En cuanto al término prescriptivo aplicable, la acción de saneamiento por vicios ocultos se encuentra sujeta a un término de seis (6) meses, contados desde la entrega del bien vendido. 31 LPRA sec. 3847.

Tras un análisis ponderado y detenido del expediente ante nuestra consideración incluyendo la "**Demanda**", la "**Contestación a Demanda**", la "**Demanda de Tercero**", la Transcripción de la Prueba Oral (TPO) y la *Sentencia* apelada, hemos arribado a la conclusión de que no procedía declarar "Ha Lugar" la reclamación instada por PAD contra BAC. Nos explicamos.

De entrada, es menester destacar que en la "**Demanda**" únicamente se incluyó una causa de acción relacionada con los daños y perjuicios dimanantes de los vicios ocultos del vehículo en controversia. Respecto a ello, coincidimos con el TPI en que dicha causa de acción se encuentra prescrita. Lo anterior obedece a que nuestro ordenamiento jurídico dispone

que la acción de saneamiento por vicios ocultos debe ejercitarse dentro de un término de seis (6) meses, contados desde la entrega del bien objeto de la compraventa.

Del propio relato de hechos de la "**Demanda**" y de la TPO se desprende que la compraventa del vehículo entre BAC y PAD se perfeccionó el 18 de enero de 2019, fecha en la cual el bien fue entregado a la parte compradora. A pesar de ello, PAD no acudió al foro judicial hasta el 11 de noviembre de 2020, cuando presentó la "**Demanda**" que dio inicio al presente pleito. Para ese momento, habían transcurrido aproximadamente veintidós (22) meses desde la entrega del bien, excediendo así el término prescriptivo de seis (6) meses dispuestos por nuestro ordenamiento jurídico para instar la acción de saneamiento. En consecuencia, al momento de presentarse la "**Demanda**" de autos, la única causa de acción alegada por PAD, esto es, aquella por vicios ocultos, ya se encontraba extinguida por el transcurso del término prescriptivo, lo cual impedía al foro de instancia conceder remedio alguno bajo dicha teoría.

No obstante lo anterior, el foro *a quo* procedió a adjudicar la controversia al amparo de una **causa de acción distinta**, la cual **no** fue alegada en la "**Demanda**" ni solicitada por PAD, a saber: dolo por vicios en el consentimiento. A esos efectos, nuestro máximo foro judicial ha definido el dolo como un vicio de la voluntad que comprende un conjunto de maniobras engañosas, contrarias a la buena fe y a las normas de honestidad, destinadas a inducir a otra parte a contratar en beneficio propio. S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 64. De igual forma, el Diccionario Panhispánico del Español Jurídico lo conceptualiza de las siguientes maneras: (1) una causa de nulidad derivada de una conducta **fraudulenta** que induce a otra parte a celebrar un negocio que no habría concluido en otras circunstancias; y (2) en el ámbito de los actos jurídicos, un vicio caracterizado por el **engaño intencional y fraudulento** que mueve a alguien a realizar un acto determinado.

En este contexto, intimamos que la determinación efectuada por el foro de instancia, en cuanto a que existía una causa de acción de dolo en el

consentimiento, se fundamentó en la Regla 13.2 de las de Procedimiento Civil que establece lo siguiente:

> Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán para todos los efectos como si se hubieran suscitado en las alegaciones. La enmienda a las alegaciones que sea necesaria para conformarlas a la evidencia, a los efectos de que las alegaciones reflejen las cuestiones suscitadas, podrá hacerse mediante una moción de cualquiera de las partes en cualquier momento, aun después de dictarse sentencia, pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objeta la evidencia en el juicio por el fundamento de ser ajena a las cuestiones suscitadas en las alegaciones, el tribunal podrá permitir las enmiendas, siempre que con ello se facilite la presentación del caso y la parte que presente la enmienda demuestre justa causa por la cual no pudo presentar la enmienda en el momento oportuno del proceso y que la admisión de tal prueba no perjudicará la reclamación o defensa de la otra parte. Al resolver la moción, el tribunal tomará en consideración el efecto de la enmienda sobre el resultado del caso y el perjuicio que le causa a la parte que se opone a la suspensión o continuación de la vista. 32 LPRA, Ap. V, R. 13.2.

En esencia, la precitada norma permite incorporar cuestiones no alegadas cuando estas han sido efectivamente litigadas con el consentimiento de las partes. Íd. Antes de efectuar su determinación, el tribunal tomará en consideración el efecto que la enmienda tendrá en el resultado del caso y el perjuicio ocasionado a la parte contraria para controvertir la prueba presentada. Informe de Reglas de Procedimiento Civil, marzo de 2008, pág. 182. Cabe destacar, además, que las enmiendas no deberán concederse de forma liberal, sino que su autorización debe ser restrictiva. Íd.

Considerando todo lo anterior, no creemos que, en este contexto, el espíritu de la Regla 13.2 de Procedimiento Civil, *supra*, y la discreción que se le confiere al tribunal de enmendar las alegaciones por medio de la presentación de la prueba en juicio se extienda a reconocer **una causa de acción distinta que nunca fue alegada en la "Demanda"**. Cabe aclarar que –a nuestro juicio– no es lo mismo permitir que la prueba amplíe o precise aspectos de una causa de acción oportunamente presentada, como podría ocurrir en una reclamación de daños y perjuicios para conceder partidas adicionales de daños establecidas por la prueba, que validar la adjudicación bajo una teoría jurídica completamente diferente que **no** formó

parte de las alegaciones originalmente presentadas, esto es, una causa de acción distinta.

Como es sabido, en nuestro sistema jurídico adversativo, corresponde exclusivamente a las partes delimitar las causas de acción y los remedios que persiguen. **Así pues, los tribunales no podemos suplir omisiones ni reformular las reclamaciones de una parte para conceder remedios distintos a aquellos peticionados, pues nuestro sistema es rogado**. Cestero v. Jta. Dir. Condominio, 184 DPR 1, 22 (2011). Esto está atado al hecho de que los tribunales "resuelven las disputas que se suscitan entre los ciudadanos y que sean llevadas ante su consideración, sin que les sea dable intervenir *motu proprio* en tales disputas". Ortiz v. Holsum, 190 DPR 511, 528 (2014). Dicho de otro modo, lo anterior equivaldría a permitir que el juzgador de los hechos se convierta en abogado de parte.

Más aun, cuando aceptar tal proceder implicaría eludir o circunvalar los requisitos sustantivos propios de la acción especial de saneamiento por vicios ocultos. Al respecto, nuestro máximo foro judicial ha reconocido que de un mismo cuadro fáctico pueden surgir simultáneamente la acción especial de saneamiento por vicios ocultos y otras acciones de carácter general, como la de dolo en la contratación. Márquez v. Torres Campos, 111 DPR 854, 869 (1982). Es menester destacar que, en el precitado pronunciamiento, nuestro Tribunal Supremo expresó que el comprador afectado puede optar por la acción que estime más adecuada para vindicar sus derechos, **siempre y cuando no recurra a la acción general con el propósito de eludir normas específicas aplicables a la acción especial cuando ambas resulten incompatibles**. Íd. Precisamente, lo que el más alto foro judicial quiso evitar es lo que ocurrió en el presente caso. Es decir, si se acogiese la conclusión de derecho consignada en la *Sentencia* del presente caso, se dejaría sin efecto práctico la causa de acción escogida por PAD, **particularmente en lo concerniente al término prescriptivo**, que en ambas acciones resulta incompatible. Tal como señaló el Tribunal Supremo, al enfrentarse a dos disposiciones incompatibles, corresponde examinar las circunstancias particulares del caso y la naturaleza de los

derechos reclamados por el comprador para determinar si la norma especial desplaza a la general. Íd. Eso fue lo que debió ocurrir aquí, pues los derechos reclamados por PAD eran propios y característicos de la acción especial por vicios ocultos y no de dolo. La acción del TPI de traer una causa de acción no alegada de dolo contractual tuvo el efecto de, precisamente, recurrir a la acción general para eludir el requisito sustantivo de prescripción de la acción especial de saneamiento por vicios ocultos.

Abónese a lo anterior que, al analizar lo que constituye dolo en nuestra jurisdicción, notamos que este conlleva, entre otros elementos, actuaciones fraudulentas o maquinaciones insidiosas dirigidas a inducir a error. Desde la perspectiva procesal, la Regla 7.2 de Procedimiento Civil, 32 LPRA, Ap. V, R. 7.2, exige que las aseveraciones de fraude se expongan con particularidad y detalle, de lo contrario, se entienden renunciadas. En consecuencia, el fraude no puede alegarse de forma vaga ni mediante expresiones meramente conclusivas, por el contrario, es preciso exponer con especificidad los hechos constitutivos que lo fundamentan y le sirven de sustento. Figueroa v. Banco de San Juan, 108 DPR 680 (1979). Por consiguiente, a diferencia de lo argumentado por PAD, una imputación de dolo, que implica señalamientos de fraude y engaño deliberado, no puede plantearse de forma abstracta o indeterminada, sino que debe exponerse con claridad.

Así pues, la parte que interese acumular una causa de acción por dolo tiene el deber de invocarla oportunamente y mediante los mecanismos procesales adecuados. Ciertamente, no es indispensable la utilización literal del vocablo "dolo", siempre que de las alegaciones surjan claramente hechos que razonablemente permitan inferir la existencia de engaño intencional o maquinaciones insidiosas. Mayagüez Hilton Corp. v. Betancourt, 156 DPR 234, 256 (2002). No obstante, tales hechos deben estar debidamente articulados en las alegaciones y no pueden presumirse ni incorporarse tácitamente mediante una interpretación expansiva de la prueba presentada. Al examinar las alegaciones incorporadas en la "**Demanda**" que nos ocupa, no hemos encontrado circunstancia alguna de

la cual se pueda interpretar que PAD acumuló una causa de acción por dolo en la contratación. Sobre este particular, si bien no es necesario expresar específicamente la palabra "dolo", lo cierto es que no se empleó ningún sinónimo de dicho término o se utilizó vocablo alguno que nos permitiera entender que se estaba acumulando dicha causa de acción. De hecho, el único adjetivo que utilizó PAD en contra del Apelante como parte de su actitud durante la transacción fue "dejadez". En fin, entendemos que no se desprende alegación alguna de la cual se pudiera interpretar que la causa de acción de dolo fue alegada.

Adicionalmente, nos llama poderosamente la atención el hecho de que de la TPO se desprende que cuando la Apelada culminó con su desfile de la prueba, BAC presentó y argumentó una moción de desestimación al amparo de la Regla 39.2 (c) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (c), fundamentada en que el asunto traído ante la consideración del TPI estaba prescrito; y en su turno para oponerse, PAD en ningún momento contradijo los fundamentos sobre prescripción presentados, ni sostuvo o planteó que en su "**Demanda**" también acumuló una causa de acción por dolo en la contratación, por lo que no podía entenderse prescrita.[2]

En su "**Alegato en Oposición**", PAD sostiene que las alegaciones contenidas en la "**Demanda**" quedaron tácitamente enmendadas a la luz de la prueba desfilada durante el juicio. En particular, argumenta que, tras presentar una moción de *nonsuit*, la representación legal de BAD no formuló objeción alguna ni hizo las reservas procesales correspondientes respecto a la ampliación de las alegaciones. Añade que de los testimonios vertidos en sala surge evidencia de maquinaciones insidiosas y de una intención deliberada de ocultar información esencial para la celebración del negocio jurídico. Para sustentar su planteamiento, PAD recurre a varios precedentes de nuestro Tribunal Supremo. Sin embargo, un examen detenido de los mismos demuestra que dichos casos presentan circunstancias fácticas y procesales sustancialmente distintas a las del presente litigio.

---

[2] *Véase*, Transcripción de la prueba oral, págs. 188-201.

En <u>Mayagüez Hilton Corp. v. Betancourt</u>, 156 DPR 234, 256 (2002), el máximo foro judicial resolvió que no era indispensable incluir expresamente el término "dolo" en las alegaciones para poder reclamar dicha causa de acción. No obstante, en ese caso, el Peticionario sí alegó en su *Reconvención* hechos constitutivos de mala fe, engaño y fraude en la contratación. Es decir, aunque no utilizó la palabra "dolo", describió conductas que inequívocamente imputaban una actuación dolosa. Por ello, el Tribunal Supremo concluyó que la naturaleza de las alegaciones permitía colegir la existencia de un reclamo por dolo. Tal escenario difiere marcadamente del caso de autos, donde la "**Demanda**" no contiene referencia alguna, ni siquiera implícita, a mala fe, fraude, engaño u otra conducta que razonablemente pudiera interpretarse como una reclamación por dolo en la contratación, más allá del señalamiento de vicios ocultos.

De otra parte, en <u>Cruz Cora v. UCB/Trans Union P.R. Div</u>., 137 DPR 917 (1995), el máximo foro judicial reiteró que las alegaciones pueden formularse en términos generales y que corresponde al tribunal conceder el remedio que en derecho proceda, conforme a la prueba presentada. En ese caso, el Recurrente incluyó una alegación general de negligencia suficiente para establecer una controversia judicial y, posteriormente, solicitó enmendar su demanda para precisar dicha imputación. En contraste, en el presente caso, PAD no articuló alegación general alguna relacionada con dolo ni promovió enmienda para incorporar tal causa de acción. En consecuencia, no resulta jurídicamente correcto concluir que el foro de instancia debía conceder un remedio correspondiente a dolo cuando dicha causa **<u>nunca</u>** fue oportunamente alegada, conforme a las exigencias de nuestro ordenamiento jurídico, **<u>y, en esencia, lo que ocurrió fue que con su dictamen el TPI enmendó la "Demanda" y acumuló una causa de acción nueva no alegada</u>**.

Asimismo, en <u>Márquez v. Torres Campos</u>, 111 DPR 854, 869 (1982), el Tribunal Supremo reconoció que de un mismo cuadro fáctico pueden surgir simultáneamente la acción especial de saneamiento por vicios ocultos y otras acciones de carácter general. No obstante, la controversia ante nos

no gira en torno a la imposibilidad de coexistencia de causas de acción. Por el contrario, se reconoce que múltiples reclamaciones pueden acumularse válidamente. El punto medular que analizamos es que PAD optó por limitar su reclamación al saneamiento por vicios ocultos, **sin acumular ni alegar expresamente una causa de acción independiente por dolo en la contratación, renunciando así a la misma por virtud de la Regla 7.2 de Procedimiento Civil, supra, que requiere que las alegaciones de fraude deban acumularse detalladamente**.

Sobre la aplicabilidad de este precedente judicial al caso de autos, debemos reiterar que lo que precisamente el Tribunal Supremo quiso evitar fue lo que ocurrió en este caso cuando el TPI entendió que la "**Demanda**" se enmendó por la prueba y acumuló una causa de acción por dolo. Al emplear este mecanismo, el foro primario circunvaló el requisito sustantivo de prescripción de la causa de acción especial de vicios ocultos para conceder un remedio bajo una reclamación que **<u>nunca</u>** se alegó o acumuló en la "**Demanda**".

A esos efectos, citamos *in extenso* la conclusión del alto foro judicial en dicho caso:

> Considerando el análisis que hemos expuesto podemos concluir que: (1) de los hechos de un caso en que se ha vendido un objeto con defectos puede surgir la posibilidad de que se ejercite la acción especial de saneamiento por vicios ocultos y/o una o varias acciones de carácter general las cuales no son incompatibles de por sí; (2) **el comprador afectado puede <u>optar por ejercer la acción que estime más apropiada para proteger sus derechos siempre y cuando no haga uso de la acción general para soslayar preceptos relativos a la acción especial que sean aplicables y que sean incompatibles con las disposiciones de la acción general</u>**; (3) **al dilucidarse cuál entre dos disposiciones incompatibles es la aplicable, deben examinarse las circunstancias particulares del caso y los derechos reclamados por el comprador afectado para determinar si la norma especial es la que aplica y excluye a la general**. Íd., pág. 869 (énfasis suplido).

Un análisis de estas expresiones traídas al contexto del presente caso nos conduce a las siguientes conclusiones: (1) PAD optó por ejercer **únicamente** la causa de acción de vicio ocultos; (2) ante la aplicación de la Regla 13.2 de Procedimiento Civil, *supra*, por parte de la juzgadora de instancia y entender incorporada la causa de acción por dolo, el TPI soslayó

el precepto de prescripción de 6 meses aplicable a la única acción que sí fue alegada e incorporada a la "**Demanda**", a saber: la acción especial de dolo; (3) evidentemente, el término prescriptivo de la acción de vicios ocultos es incompatible con el plazo prescriptivo de la acción de dolo en la contratación; y (4) al examinar dicha incompatibilidad, en unión a las particularidades del presente caso y a los derechos reclamados por PAD, concluimos que debe prevalecer el término prescriptivo de la acción de vicios ocultos; sobre todo, cuando la acción de dolo contractual nunca fue alegada por el Apelado y fue adjudicada por vía de la aplicación de la Regla 13.2 de Procedimiento Civil, *supra.*

Finalmente, en Miramar Marine *et al* v. City Walk *et al.*,198 DPR 684 (2017), el Tribunal Supremo, al amparo de las Reglas 42.4 y 71 de Procedimiento Civil, 32 LPRA, Ap. V, R. 42.4 y 71, concedió un remedio distinto al solicitado, al reconocer que la parte tenía derecho al mismo. En particular, la Regla 42.4 de Procedimiento Civil, *supra*, dispone que el tribunal concederá el **remedio** al que tenga derecho la parte favorecida, aun cuando no lo haya solicitado expresamente en sus alegaciones. **Sin embargo, dicha norma no autoriza a los tribunales a adjudicar causas de acción no alegadas y acumularlas al pleito, convirtiéndose en abogados de parte**. Su alcance se circunscribe a conceder los remedios procedentes conforme a las causas de acción efectivamente planteadas en la demanda. En otras palabras, entendemos que la facultad judicial se limita a otorgar el remedio que corresponda dentro del marco de las alegaciones presentadas y no puede extenderse a reconocer y resolver una causa distinta que no fue oportunamente articulada, como lo es la causa de acción de dolo en la contratación. Lo anterior, vulneraría el principio del debido proceso de ley y el derecho de las partes a una defensa adecuada.

Además, resolver en sentido contrario implicaría abrir una brecha sumamente peligrosa en nuestro ordenamiento jurídico, al punto de convertir en letra muerta el término prescriptivo de seis (6) meses que rige la acción especial de saneamiento por vicios ocultos. Permitir que, tras el desfile de prueba, pueda reconfigurarse la controversia bajo una alegación

de dolo cuyo efecto práctico es aplicar el término prescriptivo distinto, correspondiente a la acción general, equivaldría a desarticular el esquema normativo diseñado por el legislador y a vaciar de contenido la distinción entre ambas causas de acción. Tal proceder no solo erosionaría la certeza jurídica que la figura de la prescripción procura salvaguardar, sino que incentivaría la inercia procesal al posibilitar que una parte deje transcurrir el término de la acción especial aplicable con la expectativa de subsumir su reclamación en una teoría más amplia y de mayor alcance temporal.

Igualmente, resulta importante destacar que el Apelado no queda desprovisto de remedio alguno. Nuestro pronunciamiento no le cierra las puertas a la posibilidad de instar una acción por dolo, si entiende que concurren los elementos necesarios para ello y cumple con las exigencias sustantivas y procesales correspondientes. Lo que concluimos que no puede permitirse es que, dentro de un pleito articulado exclusivamente bajo la teoría de vicios ocultos ya prescrito, se introduzca retrospectivamente una causa distinta **no alegada** para eludir las consecuencias jurídicas del transcurso del tiempo.

Reconocemos que nuestra determinación pudiera apartarse, en cierta medida, del ideal de economía procesal. Sin embargo, en la ponderación de los intereses en conflicto, pesan con mayor fuerza los efectos adversos que una interpretación contraria tendría sobre la defensa de prescripción, cuya razón de ser es precisamente sancionar la inacción del promovente y garantizar estabilidad en las relaciones jurídicas.

En suma, al estar prescrita la única causa de acción alegada en la "**Demanda**" y haberse adjudicado el caso sobre una teoría que no fue planteada con prontitud mediante los mecanismos procesales pertinentes, no resulta procedente la concesión de remedio alguno a favor de PAD, por estar prescrita la única causa de acción que acumuló efectivamente al pleito. En vista de nuestra conclusión, se hace innecesaria la discusión de los restantes señalamientos de error esgrimidos y procede dejar sin efecto el dictamen apelado que nos ocupa.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *revocamos* la *Sentencia* apelada y desestimamos, con perjuicio, la causa de acción de vicios ocultos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones